## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 12-cv-1520-WJM-NYW

TERRY MARGHEIM,

      Plaintiff,

v.

EMELA BULJKO, Weld County Deputy District Attorney,

      Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Terry Margheim ("Margheim") sues Defendant Emela Buljko ("Buljko") for malicious prosecution in violation of the Fourth Amendment.  (ECF No. 90.)  Currently before the Court is Buljko's Motion for Summary Judgment ("Motion").  (ECF No. 101.) For the reasons explained below, the Summary Judgment Motion is granted as to any official capacity or municipal liability claims, but otherwise denied.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for

the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTS

The following facts are undisputed unless otherwise noted.

On January 25, 2010, police officers in Greeley, Colorado, responded to a disturbance at Margheim's residence.  (ECF No. 101 at 2–3.)[1]  Allegedly, Margheim had assaulted his girlfriend or former girlfriend, Courtney Graham ("Graham").  (*Id.*)  The police therefore arrested Margheim on suspicion of domestic violence in violation of Colorado Revised Statutes §§ 18-9-111 and 18-4-501.  (ECF No. 101 at 2, ¶¶ 1–2; ECF No 101-1 at 2–3.)  Based on these charges, Weld County authorities instituted a prosecution against Margheim in Weld County District Court, case number 10M251. The Court will refer to this prosecution as the "First D.V. Case."

Margheim posted a $3,000 appearance bond in the First D.V. Case.  (ECF No. 101 at 2, ¶ 5; ECF No. 101-2 at 2.)  The appearance bond stated, as a standard condition, that the defendant "acknowledges the existence of a mandatory protection order under § 18-1-1001, C.R.S."  (*Id.*)  In relevant part, the cited statute reads as

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination, particularly with respect to exhibits.

follows:

> There is hereby created a mandatory protection order against any person charged with a violation of any of the provisions of this title [*i.e.*, Title 18], which order shall remain in effect from the time that the person is advised of his or her rights at arraignment or the person's first appearance before the court and informed of such order until final disposition of the action.  Such order shall restrain the person charged from harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged.

Colo. Rev. Stat. § 18-1-1001(1).

Margheim was required to attend a pretrial conference on March 25, 2010, but he failed to appear.  (ECF No. 101 at 3, ¶ 8.)  In consequence, the Weld County District Court ordered that the $3,000 appearance bond be forfeited.  (*Id.* ¶ 9.)  The Weld County District Court also issued an arrest warrant for Margheim, and set a new appearance bond amount of $6,000.  (*Id.* ¶ 11; ECF No. 101-4 at 2.)  This warrant led to Margheim's arrest on April 10, 2010.  (ECF No. 101-5 at 8, ¶ 4.)

The record contains no details of what happened during that arrest, but it somehow led to a new criminal charge, namely, violation of a protection order, as prohibited by Colorado Revised Statute § 18-6-803.5.  (*Id.* ¶ 5.)  The Court therefore presumes that the police somehow obtained evidence of Margheim's contact with Graham.  This violation led to a new criminal prosecution, apparently instituted the same day as the arrest, that was assigned Weld County District Court case number 10M1026.  (ECF No. 101 at 3, ¶¶ 12–13.)  The Court will refer to this case as the "Second D.V. Case."

Two days later (April 12, 2010), Margheim posted the $6000 bond set in the First

D.V. Case.  (ECF No. 113 at 5, ¶ 21.)[2]  Ten days after that, the Defendant here, Buljko, enters the story.

According to Buljko, the Weld County District Attorney's Office prepares regular reports regarding currently pending defendants against whom new charges have been filed.  (ECF No. 114-2 at 3.)  Buljko claims that this report alerted her to Margheim's new charge (*i.e.*, the Second D.V. Case).  (*Id.*)  She therefore filed a motion in the First D.V. Case to revoke Margheim's appearance bond ("Motion to Revoke").  (ECF No. 101-7 at 2.)  The Motion to Revoke was signed by Buljko, notarized, and alleged the following basis for revocation: "Defendant has a new offense in Weld County case, 10M1026 [the Second D.V. Case] (failed to comply with the protection order issued in 10M251 [the First D.V. Case])."  (*Id.*)  As already noted, however, the only bond in force in the First D.V. Case was the second appearance bond, posted on April 12.  Thus, Buljko was effectively seeking to revoke a bond entered on April 12 based on an offense that occurred on April 10—before the bond existed.

The Weld County District Court granted Buljko's Motion to Revoke and issued a warrant for Margheim's arrest.  (ECF No. 101 at 4, ¶ 18.)  Margheim was arrested on May 7, 2010.  (*Id.* ¶ 19.)  That arrest led to yet another criminal prosecution being instituted against Margheim, Weld County District Court case number 10CR754.

_____

[2] Buljko objects to paragraph 21 and certain other paragraphs because they supposedly "include[] the statements of Counsel which are not properly supported or admissible at the time of trial."  (ECF No. 114 at 3, ¶ 21.)  This objection borders on bad faith.  The alleged "statements of Counsel" are from Margheim's counsel's affidavit attesting that the documents submitted in opposition to summary judgment are true and correct copies.  (*See* ECF No. 113-1.)  This Court does not require such affidavits, but other jurisdictions do, and they are otherwise relatively common.  They do *not* create an attorney-testimony problem.  The Court accordingly overrules this objection wherever it appears in Buljko's Reply brief.

The parties' summary judgment briefs are oddly lacking on the details of this new case. The Court therefore relies upon certain findings made by the Weld County District Court in response to a suppression motion filed in that case. (*See* ECF No. 113-5.) Apparently Greeley police officers, acting on the revoked-bond arrest warrant, went to Margheim's residence on May 7, 2010, and saw Graham exiting the front door. (*Id.* at 6.) They then went around one side of Margheim's residence and through his backyard to the other side of the residence, where they found Margheim exiting a side door. (*Id.*; *see also* ECF No. 113-6 at 3.) The officers there arrested Margheim and, during the search incident to that arrest, discovered illegal drugs in Margheim's possession.  (ECF No. 113-5 at 7.) Those drugs formed the basis of the new prosecution, 10CR754, which the Court will refer to as the "Drug Case."

Nothing in the summary judgment record specifies how long Margheim was detained on account of the Drug Case. In his currently operative Complaint, he alleges that his detention lasted "approximately six months." (ECF No. 90 ¶ 28.) There is no indication that Margheim was entirely released from custody at this point. Again, the record is not clear, but the Court is independently aware that Margheim was named as a defendant in an apparently unrelated federal criminal case filed in June 2010. *See United States v. Antuna et al.*, Case No. 10-cr-00326-PAB (D. Colo.). The Court therefore presumes that Margheim was transferred to federal custody in late 2010.[3]

In February 2011, Margheim's defense counsel in the Drug Case moved to suppress the evidence obtained at the time of Margheim's arrest in May 2010. (ECF

---

[3] This presumption is not material to the disposition of the instant motion. The Court includes it only to fill out the timeline.

No. 113 at 5, ¶ 24.)  The Weld County District Court held a hearing on that motion and then, in June 2011, issued the findings already summarized above.  (*Id.* ¶ 25.)  The court found that the arrest warrant obtained by Buljko "was improperly requested," lacked probable cause, and was obtained by "reckless conduct by the Deputy District Attorney that was involved in this case," referring to Buljko.  (ECF No. 113 at 3–4.)  The court denied the motion to suppress, however, because it found that: (a) the arresting officers had no reason to know that the warrant was defective; (b) the officers obtained independent probable cause to arrest Margheim for violation of the statutory protection order when they observed him and Graham exiting the same home at about the same time; and therefore (c) the search incident to arrest, which discovered the drugs, was valid.  (*Id.* at 5–7.)

In October 2011, Margheim's counsel moved for reconsideration.  (ECF No. 113 at 6, ¶ 27.)  This motion mainly focused on an argument previously raised but allegedly ignored by the Weld County District Court.  Specifically, Margheim's counsel re-urged the legal consequences of the fact that the arresting officers found Margheim only by entering the curtilage of Margheim's home (*i.e.*, when they went around one side and through the backyard to the other side).  (ECF No. 113-6 at 3–4.)  Counsel argued that curtilage receives the same protection as the home itself, meaning that the police may not enter absent a warrant, exigent circumstances, or some other exception.  (*Id.*)  Counsel further argued that because the warrant was invalid, and because no exception to the warrant requirement existed, the officers obtained probable cause to arrest Margheim for violating the statutory protection order (*i.e.*, they saw him exiting the

6

side door) only through warrantless trespassing on his curtilage.  (*Id.*)

On December 1, 2011, the Weld County District Court granted Margheim's

reconsideration motion and suppressed the evidence obtained through the arrest.

(ECF No. 113 at 6, ¶ 28.)  On December 13, 2011, the Weld County District Attorney's

Office moved to dismiss the Drug Case, stating that "the People cannot prove the case

beyond a reasonable doubt" in light of "the Court's ruling suppressing all evidence."

(ECF No. 113-7 at 2.)  The court granted that motion.  (ECF No. 113-4 at 8.)

### III.  ANALYSIS

Margheim instituted this lawsuit against Buljko and others in June 2012,

asserting numerous claims.  (ECF No. 1.)  Through various rounds of amendment and

motion practice, his claims have been narrowed to a single claim against Buljko under

42 U.S.C. § 1983, specifically, malicious prosecution in violation of the Fourth

Amendment.  (*See* ECF No. 57.)

Buljko now argues that certain elements of malicious prosecution fail as a matter

of law in Margheim's case.  Buljko further argues that she is entitled to absolute

immunity, or at least qualified immunity.  Finally, Buljko claims that Margheim's

allegations against Buljko in her official capacity are barred by Eleventh Amendment

immunity, and otherwise fail as a matter of law.  The Court will address all of these

arguments in turn.

### A.    Challenges to the Elements of Malicious Prosecution

The elements of a § 1983 malicious prosecution claim are: "(1) the defendant

caused the plaintiff's continued confinement or prosecution; (2) the original action

terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). Surprisingly, Buljko claims that Margheim fails the second element—a favorable outcome in the underlying proceeding—because Margheim eventually pled guilty *in the First D.V. Case*. (ECF No. 101 at 5; *see also* ECF No. 114 at 5–7.)

It is difficult to understand how Buljko's counsel can assert this argument in good faith. At least since the Second Amended Complaint, Margheim has clearly stated his theory that Buljko's bond-revocation warrant led to his wrongful prosecution *in the Drug Case*. (*See* ECF No. 90 ¶¶ 17–29.) In other words, but for Buljko's bond-revocation warrant, Margheim never would have been arrested; but for the arrest, drugs would never been found on him in the search incident to arrest; but for the drugs found on him in the search incident to arrest, he never would have been charged with possessing those drugs; and but for being charged with possessing those drugs, he never would have been held in jail for six months on drug charges.[4]

It is a matter of public record that those drug charges terminated in Margheim's favor when the Weld County District Court suppressed the evidence and the District

---

[4] Margheim's federal indictment complicates this picture. A federal arrest warrant was issued for Margheim on June 10, 2010—just over a month after he was arrested on the bond-revocation warrant. (*See* Case No. 10-cr-00326, ECF No. 18.) Thus, Margheim might have spent most of the next six months in jail anyway. He would still have a claim, however, for the month or so spent in jail solely because of the Drug Case. The question then would be damages. Margheim claims that his six months in detention in the Drug Case resulted in loss of income, foreclosure on his home, loss of personal property, mental anguish, emotional distress, and health complications. (ECF No. 90 at 3.) But how much of this would have happened anyway given the pending federal arrest warrant? The parties do not address this, and therefore the Court will not explore it further.

Attorney's Office dismissed the indictment.  Thus, the favorable termination element of a malicious prosecution claim is established beyond doubt here, and it is deeply troubling that Buljko's counsel could so fundamentally misunderstand this point.

Relying on this misunderstanding, however, Buljko goes on to claim that Margheim cannot possibly prove that probable cause was lacking for his arrest in the First D.V. Case (the third malicious prosecution element), or that Buljko instituted the First D.V. Case with malice (the fourth element).  Whether true or not, these arguments are irrelevant to whether these elements have been established with reference to the Drug Case.  Accordingly, Buljko is not presently entitled to judgment as a matter of law on any element of Margheim's malicious prosecution claim.

**B.    Absolute Immunity**

Buljko argues that absolute prosecutorial immunity protects her from any liability potentially arising from the Motion to Revoke.  (ECF No. 101 at 7–8.)  "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  There is no immunity, however, when a prosecutor "act[s] as a complaining witness rather than a lawyer."  *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).  Naturally, Buljko argues that she acted in her prosecutorial role when she filed the Motion to Revoke, while Margheim claims that Buljko acted as a complaining witness.  (*Compare* ECF No. 101 at 8 *with* ECF No. 113 at 6–10.)

The *Kalina* case is instructive on this point.  The prosecutor in *Kalina* instituted a

burglary prosecution against a suspect by filing three documents: (1) an unsworn "information charging [the suspect] with burglary," (2) an unsworn "motion for an arrest warrant," and (3) a sworn "Certification for Determination of Probable Cause . . . that summarized the evidence supporting the charge." *Kalina*, 522 U.S. at 121 (internal quotation marks omitted).  The sworn certification, unfortunately, "contained two inaccurate factual statements," and the charges against the suspect were later dropped.  *Id.* at 121–22.  The suspect then sued under § 1983 for malicious prosecution.  *Id.* at 122.

The Supreme Court held that the prosecutor's "activities in connection with the preparation and filing of two of the three charging documents—the information and the motion for an arrest warrant—[were] protected by absolute immunity." *Id.* at 129.  In addition, "except for [the prosecutor's] act in personally attesting to the truth of the averments in the certification, it seem[ed] equally clear that the preparation and filing of the third document in the package" was protected by absolute immunity.  *Id.*  "The critical question, however, [was] whether she was acting as a complaining witness rather than a lawyer when she executed the certification '[u]nder penalty of perjury.'"  *Id.* (quoting the factual record).  The Supreme Court determined that the prosecutor was a complaining witness, despite the close connection between attesting to the relevant facts and preparing the various charging documents:

> [The prosecutor] argues that the execution of the certificate was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution.  That characterization is appropriate for her drafting of the certification, her determination that the evidence was sufficiently strong to

> justify a probable-cause finding, her decision to file charges,
> and her presentation of the information and the motion to
> the court.  Each of those matters involved the exercise of
> professional judgment; indeed, even the selection of the
> particular facts to include in the certification to provide the
> evidentiary support for the finding of probable cause
> required the exercise of the judgment of the advocate.  But
> that judgment could not affect the truth or falsity of the
> factual statements themselves.  Testifying about facts is the
> function of the witness, not of the lawyer.  No matter how
> brief or succinct it may be, the evidentiary component of an
> application for an arrest warrant is a distinct and essential
> predicate for a finding of probable cause.  Even when the
> person who makes the constitutionally required "Oath or
> affirmation" is a lawyer, the only function that she performs
> in giving sworn testimony is that of a witness.

*Id.* at 130–31.  Accordingly, the prosecutor was not entitled to absolute immunity.  *Id.* at 131.

The only notable difference between *Kalina* and the case at hand is that Buljko did not attest to the warrant-supporting facts in a separate document, but incorporated the attestation (signed and notarized) into the Motion to Revoke itself.  (ECF No. 101-7 at 2.)  This is not a material distinction.  When Buljko attested that "[Margheim] has a new offense in Weld County case, 10M1026 (failed to comply with the protection order issued in 10M251)," she acted as a complaining witness, not as a prosecutor.  (*Id.*)  Therefore, like the prosecutor in *Kalina*, Buljko is not entitled to absolute immunity.

## C.     Qualified Immunity

Even when absolute immunity is not available, a prosecutor may still be entitled to qualified immunity.  *Kalina*, 522 U.S. at 126.  Buljko argues that she is at least entitled to qualified immunity.  (ECF No. 101 at 8–9.)

"Qualified immunity shields federal and state officials from money damages

11

unless a plaintiff pleads facts showing (1) that the official violated a statutory or
constitutional right, and (2) that the right was clearly established at the time of the
challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, ___, 131 S. Ct. 2074, 2080
(2011) (internal quotation marks omitted).  Buljko appears to attack only the first
element: "[Margheim] cannot provide any support that the filing of a Motion to Revoke
Bond, which occurs during the prosecution of the matter, constitutes a violation of [his]
Constitutional rights."  (ECF No. 101 at 9.)

This phrasing, of course, ignores the fact that Buljko did more than just file the
Motion to Revoke.  She also provided a sworn attestation of the facts supporting the
Motion to Revoke.  The *Kalina* decision demonstrates that swearing falsely in this
context can be a Fourth Amendment violation.  Moreover, although Buljko does not
attack the clearly established prong of the qualified immunity test, *Kalina* further
demonstrates that it has been clearly established since at least 1997 that a prosecutor
may be liable under § 1983 for falsely swearing to the facts supporting a warrant
application.  Accordingly, Buljko is not entitled to qualified immunity on this record.

**D.     Official Capacity/Municipal Liability Claims**

Margheim's Second Amended Complaint alleges that "Buljko is liable in an
official capacity to the extent her actions resulted from an official custom, policy or
practice or to the extent Buljko has policymaking authority."  (ECF No. 90 ¶ 32.)  Buljko
moves for summary judgment on these theories, arguing that the District Attorney's
Office could never be liable for damages in light of the Eleventh Amendment, and that
there is no evidence that any custom or practice had an effect on this matter.  (ECF No.

101 at 9–13.) Margheim ignores these arguments in his Response. (*See generally* ECF No. 113.) The Court therefore deems Margheim to have abandoned any claim based on official capacity or a custom/policy. *See, e.g.*, *Assoc. Commc'ns & Research Servs., Inc. v. Kan. Pers. Commc'ns Servs., Ltd.*, 13 F. Supp. 2d 1172, 1177 (D. Kan. 1998) (deeming summary judgment respondent to have abandoned a claim when it ignored the movant's arguments for summary judgment on that claim). Summary judgment is therefore appropriate as to these claims.

E.      **"Malice"**

The foregoing establishes that Buljko's Motion should be denied except as to Margheim's official capacity and municipal liability claims. Nonetheless, the Court is unconvinced that this matter is ripe for trial. This Court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). In that light, the Court is particularly concerned with Margheim's ability to prove a crucial element, namely, that Buljko "acted with malice." *Wilkins*, 528 F.3d at 799.

In this context, "malice" means "any motive other than a desire to bring an offender to justice[.]" *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1124 (D. Colo. 2014) (internal quotation marks omitted), *aff'd*, 810 F.3d 750 (10th Cir. 2016). In cases claiming that a warrant was improperly obtained, malice is almost always established through allegations of falsifying evidence or acting with reckless disregard to the truth or falsity of important evidence. *See id.*; *see also Wilkins*, 528 F.3d at 799–801; *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991); *Grobecker v. Grundy*, 2014 WL 3593513,

at *8–9 (D. Colo. July 18, 2014).

Margheim does not allege that Buljko falsified evidence when filing the Motion to Revoke.  And indeed, nothing in Buljko's statement is affirmatively false: Margheim *was* charged with "a new offense in Weld County case, 10M1026" and that offense was, in fact, "fail[ure] to comply with the protection order issued in 10M251."  (ECF No. 101-7 at 2.)  Thus, Margheim focuses on Buljko's alleged recklessness in omitting the fact that the bond to be revoked was not in force on the date of the alleged offense.  (See ECF No. 113 at 2, 9–10, 11.)

Margheim's basic theory is sound—recklessness may be "inferred from omission of facts [from a warrant application] which are clearly critical to a finding of probable cause."  *Bruning*, 949 F.2d at 357 (internal quotation marks omitted).  But "[t]his statement, of course, assumes that affiant was aware of such omitted facts."  *Id.* at n.4.  Furthermore, "[a]llegations of negligence or innocent mistake are insufficient" to establish a reckless omission.  *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990) (internal quotation marks omitted; brackets in original).

As the arguments have been laid out in the parties' briefs, and as the record currently stands, it appears that Margheim intends to assert that Buljko was reckless because she failed to review Margheim's case file with sufficient diligence, thereby missing the fact that the bond at issue was not in force at the time of the new offense. (*See* ECF No. 113 at 10–11, 13.)  If this is indeed the extent of Margheim's recklessness argument, it must fail as a matter of law.  It is, at bottom, an argument that Buljko negligently failed to learn important facts.  That is not enough to support the recklessness element under the standards set forth above.

14

The Court recognizes that malice "may be inferred from the want of probable cause." *Sanchez*, 65 F. Supp. 3d at 1124. However, if the lack of probable cause was the only evidence of malice presented in this case, it would be insufficient evidence for a reasonable jury to base a finding in favor of Margheim.

The Court also recognizes that the Weld County District Court, in ruling on Margheim's suppression motion, described Buljko's actions as "reckless." (ECF No. 113-5 at 4–5.) For three reasons, that description is irrelevant for current purposes. First, Margheim does not argue that it is issue preclusive.[5] Second, even if issue preclusion had been raised, it is not clear that the parties actually litigated the issue of Buljko's alleged recklessness to the Weld County District Court, nor is it clear that Buljko could be considered a party to those proceedings. *Cf. B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) ("the general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim'" (quoting Restatement (Second) of Judgments § 27 (1980))). Third, the transcript of the Weld County District Court's ruling strongly suggests that the court did not have in mind the recklessness standard for malicious prosecution claims, but instead used the word *reckless* in a more colloquial sense. The court stated for example, that Buljko "easily could have determined, by a careful look at the—and even not so much a careful look,

---

[5] Near the end of his brief, he states that the Weld County District Court's statement "creates a triable issue of fact (if not a binding finding) regarding [Buljko's] reckless indifference." (ECF No. 113 at 13.) Margheim does not elaborate on his parenthetical, and it is therefore insufficient to raise a preclusion argument.

just a look at the file would have indicated that there were no grounds to request that warrant." (ECF No. 113-5 at 4.)  Thus, it appears that the Weld County District Court considered Buljko's conduct reckless in the sense of gross inattention to important details, not actual awareness of those details and a deliberate choice to omit them.

If Buljko had moved for summary judgment on the malice element, and if the summary judgment record had otherwise remained the same, the Court would have been required to grant that motion.  Buljko, of course, tried to move for summary judgment on malice but directed her entire argument at the First D.V. Case, which is irrelevant.  (*See* Part III.A, *supra*.)  Thus, although the Court sees that the malice element in Margheim's case may be fatally infirm, the Court cannot be confident that the parties assembled a record sufficient to permit the Court to hold as much.

If Buljko has developed a record regarding what she knew and did not know at the time she prepared the Motion to Revoke, the Court will permit Buljko to file a supplemental summary judgment motion focused specifically on the malice element in relation to the Motion to Revoke and the ensuing Drug Case—and in particular, malice in the form of recklessness.  The Court emphasizes that Buljko must present a proper record, not just a page of out-of-context deposition testimony, for example.  If Buljko cannot in good faith present that record, she will be required to file a notice that she does not intend to file a supplemental summary judgment motion.  If the Court receives that notice, it will lift the current stay of proceedings (*see* ECF No. 122) and set a Final Trial Preparation Conference.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Buljko's Motion for Summary Judgment (ECF No. 101) is GRANTED IN PART

and DENIED IN PART as follows:

    a.      Summary judgment is GRANTED as to Margheim's official capacity and

    municipal liability claims, and

    b.      Summary judgment is otherwise DENIED.

2.      No later than **April 11, 2016**, Buljko shall file either:

    a.      A supplemental summary judgment motion directed at the malice element

    of a malicious prosecution claim, or

    b.      A notice stating that Buljko has elected not to file a supplemental

    summary judgment motion; in such event the Court will lift the current stay

    of proceedings at that time.

3.      If Buljko timely files a supplemental summary judgment motion, the parties'

response and reply deadlines shall be governed by D.C.COLO.LCivR 56.1(a).  If

such a supplemental summary judgment motion is timely filed, the current stay of

proceedings shall remain in effect until the Court rules on said motion.

4.      Buljko's Motion to Preclude Dr. Obe D, Dr. Cynthia Bean and William McAdams

from Offering Testimony at Trial (ECF No. 118) is DENIED WITHOUT

PREJUDICE as premature.[6]

---

[6] The undersigned generally does not expect motions *in limine* until sometime shortly
before the deadline for their filing—21 days before the Final Trial Preparation Conference.  *See*
WJM Revised Practice Standard III.F.3.  While this deadline does not prevent a party from filing
a motion *in limine* substantially earlier, the Court finds under the circumstances that Buljko's
motion should not be addressed until it is clear that the case is actually proceeding to trial.

Dated this 11th day of March, 2016.

BY THE COURT:

William J. Martinez
United States District Judge